IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HYUNDAI STEEL COMPANY,<br><br>   Plaintiff,<br><br>  v.<br><br>UNITED STATES,<br><br>   Defendant. | Court No. 21-00536 |

## COMPLAINT

  Plaintiff, Hyundai Steel Company ("Hyundai Steel"), by and through its counsel, hereby alleges and states as follows:

## JURISDICTION

  1. Plaintiff brings this action pursuant to Sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(i) of the Tariff Act of 1930, *as amended* ("the Act"), 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii).  This action is an appeal of the United States Department of Commerce's ("Commerce") *Final Results* in the January 1, 2018 to December 31, 2018 administrative review of the countervailing duty ("CVD") order on certain hot-rolled steel flat products ("HR") from the Republic of Korea.  *Certain Hot-Rolled Steel Flat Products From the Republic of Korea: Final Results of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 47,621 (Dep't Commerce Aug. 26, 2021) ("*Final Results*"), and accompanying Issues and Decision Memorandum ("*Final Results IDM*").

  2. This Court has jurisdiction under 28 U.S.C. § 1581(c).

## **STANDING**

3. Plaintiff is a producer and exporter of HR from Korea.

4. Plaintiff was a party to the January 1, 2018 to December 31, 2018 administrative review conducted by Commerce and participated in the administrative review by supplying questionnaire responses and by filing case and rebuttal briefs. Therefore, Plaintiff is an interested party pursuant to 19 U.S.C. § 1516a(f)(3) and 19 U.S.C. § 1677(9)(A). As an interested party that actively participated in the proceeding below, Plaintiff has standing to commence this action under 19 U.S.C. § 1516a(a)(2)(A), 19 U.S.C. § 1516a(d), 28 U.S.C. § 2631(c), and 28 U.S.C. § 1581(c).

## **TIMELINESS OF THIS ACTION**

5. On August 26, 2021, Commerce published in the *Federal Register* the challenged *Final Results*. *Certain Hot-Rolled Steel Flat Products From the Republic of Korea: Final Results of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 47,621 (Dep't Commerce Aug. 26, 2021). Plaintiff filed a summons initiating this appeal on September 22, 2021 pursuant to Sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Act, 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (B)(iii), which was within thirty (30) days of publication of the *Final Results* in the *Federal Register*. This action was therefore timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I), 28 U.S.C. § 2636(c), and U.S. Court of International Trade Rule 3. This complaint is being filed on October 21, 2021, which is within 30 days of the filing of the summons and is thus timely filed under Court of International Trade Rule 3(a)(2).

## STATEMENT OF FACTS

6.      On December 11, 2019 Commerce initiated an administrative review of the CVD order on HR from Korea. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 67,712 (Dep't Commerce Dec. 11, 2019). Commerce's period of review ("POR") for this administrative review is January 1, 2018 to December 31, 2018.

7.      On February 11, 2020, Commerce selected Hyundai Steel as the sole mandatory respondent in this administrative review. *See* Memorandum to Shawn Thompson, Director, Office V, Enforcement and Compliance, from Hannah Falvey, International Trade Compliance Analyst, Office V, Enforcement and Compliance, "Administrative Review of the Countervailing Duty Order of Certain Hot-Rolled Steel Flat Products from the Republic of Korea: Respondent Selection," (Feb. 11, 2020). Commerce issued the initial questionnaire on February 20, 2020.

8.      Hyundai Steel filed its response to Commerce's initial questionnaire on April 9, 2020. *See* Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Certain Hot-Rolled Steel Flat Products from the Republic of Korea, Case No. C-580-884: Hyundai Steel's Initial Questionnaire Response," (Apr. 9, 2020) ("Hyundai Steel's IQR"). In the "Programs Not Previously Used Or Provided No Measurable Benefits" section of the initial questionnaire, Hyundai Steel responded to Question 2, which listed the program "Provision of Port Usage Rights at the Port of Incheon."[1] Hyundai Steel reported that between March 2003 and January 2007, it paid for and facilitated the construction of a port facility at North Incheon Harbor and received reimbursements from the GOK between 2004 and 2007. *Id.* at 41-46. Ownership of the

---

[1] Hyundai Steel also responded to Question 9 of this section, which listed the program "{Government of Korea ("GOK") Infrastructure Investment at Inchon North Harbor." As Hyundai Steel understood that the programs listed in Questions 2 and 9 were the same, it responded to Question 9 by referring to its response to Question 2. *See* Hyundai Steel's IQR at 46.

port facility reverted to the GOK in 2007.  However, because Hyundai Steel had financed and constructed the wharf at North Incheon Harbor, Hyundai Steel acquired the right to operate and use the port for its own operations, as well as collect fees from third-party users (although no other party had used the harbor to date).  *Id.* at 43.  Hyundai Steel further noted that it received berthing income from shipping companies and reported the total amount of berthing income it received from 2007 (when construction of the port was complete) through the POR.  *Id.* at 43 and Exhibit G-3.

9.  In addition, Hyundai Steel responded to Question 29 of the "Programs Not Previously Used Or Provided No Measurable Benefits" section of the initial questionnaire, which listed the program "Reduction for Sewerage Usage Fee."  *Id.* at 56-57.  In disclosing its participation in this program, Hyundai Steel reported that, because it uses a significant amount of water for cooling machinery and merchandise at very high temperatures, a significant volume of water it consumes is vaporized in the cooling process, thereby reducing Hyundai Steel's volume of wastewater.  *Id.* at 57.  Pursuant to Article 21(1)(7) of the Regulation on Sewerage Usage of the Incheon Metropolitan City and Article 9 of the Enforcement Regulation, Hyundai Steel received a reduction in its sewerage usage fees such that it was only charged for the wastewater it introduced into the Incheon City sewerage system (*i.e.*, the volume of water that actually needed to be purified by the Incheon City purification facility).  *Id.* at 56-57 and Exhibits G-21 and G-22.  Hyundai Steel stated that any entity that can demonstrate its actual sewerage usage is entitled similar treatment and that Hyundai Steel's sewerage usage fees were directly proportional to its use of the public sewerage system.  *Id.*  Thus, Hyundai Steel understood that these reductions were not countervailable under the Act.  *See* 19 U.S.C. § 1677(5)-(5A).  Nevertheless, Hyundai Steel responded to Commerce's Standard Questions and Usage

Appendices and provided the appropriate documentation requested therein. Hyundai Steel's IQR at Exhibits G-23, G-24, and G-25.

10. A few days prior to the filing of Hyundai Steel's IQR, the GOK timely filed its response to Commerce's initial questionnaire, corroborating Hyundai Steel's reporting on both the Incheon Harbor and sewerage usage programs. *See* Letter to Sec'y Commerce from Kim & Chang, "Certain Hot-Rolled Steel Flat Products from the Republic of Korea, 01/01/2017-12/31/2017 {sic} Administrative Review, Case No. C-580-884: The Republic of Korea's Response to the Countervailing Duty Initial Questionnaire," (Feb. 6, 2020) ("GOK's IQR") at 105-106 and 133-155. Regarding the Incheon Harbor program, the GOK reported the amount of direct reimbursements Hyundai Steel received for constructing the port between 2004 and 2007 and noted that Commerce had previously examined this program in prior proceedings to find that Hyundai Steel received no measurable benefit from these payments. *Id.* at 105-106.[2]

11. Regarding Hyundai Steel's sewerage usage fees, the GOK stated that pursuant to Article 36 of the Presidential Decree to the Sewerage Act, sewage fees "must be calculated on the basis of the amount and type of the sewage water drained down the system." *Id.* at 133. Authority to calculate and charge such fees is delegated to regional level governments. *Id.* at 135. However, the GOK explained that users of the public sewerage system, such as households, normally do not have meters to gauge the actual amount of sewage they introduce into the public system. Thus, for practical reasons, regional authorities will generally use the volume of clean water consumed from the public system as a proxy for the volume of wastewater introduced into

---

[2] The GOK's response was to Question 9 of the "Programs Not Used or Provided No Measurable Benefits" section of its questionnaire, which listed the program "GOK Infrastructure Investment at Inchon North Harbor." Question 2 of the same section listed the program "Provision of Port Usage Rights at the Port of Incheon," which the GOK understood to reference the same program that was listed in Question 9. Thus, the GOK referenced its response to Question 9 in its response to Question 2.

the public sewerage system in order to calculate the sewerage usage fee. *Id.* at 133-134.

12. Notwithstanding the general practice, the GOK stated that if an entity can demonstrate that the volume of wastewater it introduces into the public system is less than the volume of clean water it consumes, the local authorities will base the sewerage usage fees on the volume of sewage that the entity actually introduced into the public system. *Id.* The GOK explained that Hyundai Steel was able to demonstrate through a report published by an independent third party that the volume of wastewater that it introduced into the public system was far less than the volume of clean water that it consumed. *Id.* at 136-137.

13. Once the Incheon municipal authority reviewed and approved Hyundai Steel's application, Hyundai Steel's proven wastewater volume was used as the basis for its sewerage fees. *Id.* The GOK provided all of the relevant statutes and regulations, as well as Hyundai Steel's application, approval letter, and third-party report. *See id.* at Exhibits SEWER-1 and SEWER-4. Both Hyundai Steel's application and approval letter cite the relevant regulations under which Hyundai Steel's fee reductions were approved – specifically, Article 21 of the Regulation on Sewerage Usage of the Incheon Metropolitan City and Article 9 of the Enforcement Regulation. *Id.*

14. No supplemental questionnaires were issued to Hyundai Steel regarding its reported sewerage fees. The GOK, on the other hand, was issued one supplemental questionnaire, which in part, addressed Hyundai Steel's sewerage usage fees. In its response, the GOK provided revised translations of relevant laws related to the program as well as data that demonstrated this program was used across a wide range of industries during the POR. *See* Letter to Sec'y Commerce from Kim & Chang, "Certain Hot-Rolled Steel Flat Products from the Republic of Korea, 01/01/2017-12/31/2017 {sic} Administrative Review, Case No. C-580-884:

The Republic of Korea's Response to the Countervailing Duty First Supplemental Questionnaire," (July 16, 2020) at 98-103 and Exhibits SEWER-1 (Revised), SQ1 SEWER-1, SQ1 SEWER-2, and SQ1 SEWER-3.

15. On July 9, 2020, Commerce issued Hyundai Steel a supplemental questionnaire, which in part addressed the Incheon Harbor program. Hyundai Steel responded to these questions on July 30, 2020. *See* Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Certain Hot-Rolled Steel Flat Products from the Republic of Korea, Case No. C-580-884: Hyundai Steel's First Supplemental Questionnaire Response," (July 30, 2020) at 24-25 and Exhibits G-26 and G-27 (providing clarifying and supporting documentation for amounts previously reported). As can be seen from that response, the vast majority of Commerce's supplemental questionnaire did not address the Incheon Harbor program.

16. Nearly nine months after Hyundai and the GOK submitted their IQRs, Commerce issued two questionnaires directly addressing the Incheon Harbor program. *See* Letter to Morris, Manning & Martin, LLP, from Robert Galantucci, Program Manager, Office V, AD/CVD Operations, Enforcement & Compliance (Jan. 8, 2021); Letter to Kim & Chang from Robert Galantucci, Program Manager, AD/CVD Operations, Office V, Enforcement and Compliance, "Administrative Review of the Countervailing Duty Order on Certain Hot-Rolled Steel Flat Products from the Republic of Korea: Second Supplemental Questionnaire," (Jan. 8, 2021). Both questionnaires referenced Commerce's final results in *Certain Hot-Rolled Steel Flat Products From the Republic of Korea: Final Results of Countervailing Duty Administrative Review, 2017*, 85 Fed. Reg. 64,122 (Dep't Commerce Oct. 9, 2020), and accompanying Issues and Decision Memorandum ("*HR from Korea 2017*") at 5-6 and 29-30, in which Commerce relied on facts available ("FA") and facts available with an adverse inference ("AFA") to

conclude that Hyundai Steel received a countervailable benefit from the provision of port usage rights at the port at Incheon Harbor.[3]

17.   On January 21, 2021, Hyundai Steel fully responded to Commerce's supplemental questionnaire on the Incheon Harbor program.  *See* Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Certain Hot-Rolled Steel Flat Products from the Republic of Korea, Case No. C-580-884: Hyundai Steel's Second Supplemental Questionnaire Response," (Jan. 21, 2021).  In its response, Hyundai Steel described the nature of the "fees" that Commerce had countervailed in *HR from Korea 2017* and explained how they were calculated.  Hyundai Steel again reiterated that these fees were not in fact collected during the POR.  *Id.*

18.   On January 21, 2021, the GOK also timely responded to Commerce's supplemental questionnaire on the Incheon Harbor program, providing the requested responses to the Standard Questions Appendix and a detailed explanation of how these "fees" that Hyundai Steel could have, but did not, collect were calculated.  *See* Letter to Sec'y Commerce from Kim & Chang, "Certain Hot-Rolled Steel Flat Products from the Republic of Korea, 01/01/2018 - 12/31/2018 Administrative Review, Case No. C-580-884: The Republic of Korea's Response to the Countervailing Duty Second Supplemental Questionnaire," (Jan. 21, 2021).

19.   Commerce issued its *Preliminary Results* on February 16, 2021, which were published in the *Federal Register* on February 22, 2021.  *See Certain Hot-Rolled Steel Flat Products From the Republic of Korea: Preliminary Results of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 10,533 (Dep't Commerce Feb. 22, 2021) ("*Preliminary Results*"), and accompanying Decision Memorandum ("*Preliminary Decision*

---

[3] Commerce's final results in that case were recently remanded in response to a request for voluntary remand for Commerce to reconsider its application of FA and AFA and, if necessary, Hyundai Steel's subsidy rate.  *See Hyundai Steel Co. v. United States*, No. 20-03799, Slip Op. 21-112 (Ct. Int'l Trade Aug. 27, 2021).

*Memo*"). In these results, Commerce preliminarily determined that both the provision of port usage rights at Incheon Harbor and Hyundai Steel's sewerage fees constituted countervailable subsidies. *Preliminary Decision Memo* at 14-18. For each of these "programs," Commerce calculated an *ad valorem* subsidy rate of 0.01 percent. *Id.* In total, Commerce preliminarily determined that Hyundai Steel received a countervailable subsidy rate of 0.51 percent *ad valorem*. *See Preliminary Results*, 86 Fed. Reg. at 10,534. This was just over the *de minimis* threshold under Commerce's regulations. *See* 19 C.F.R. § 351.106(c).

20. On July 2, 2021, Hyundai Steel timely filed its case brief, arguing that Commerce's determination that Hyundai Steel's port usage rights at Incheon Harbor and its sewerage usage fees were countervailable was in error. First, Hyundai Steel argued that Commerce failed to properly consider Hyundai Steel's port usage rights in the context of the costs Hyundai Steel incurred building the port at Incheon Harbor. *See* Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Certain Hot-Rolled Steel Flat Products from the Republic of Korea, Case No. C-580-884: Hyundai Steel Case Brief," (July 2, 2021) at 2-17. In doing so, Hyundai Steel argued that Commerce's analysis of the compensation Hyundai Steel received for building and then ceding ownership of the port failed to address whether said compensation was excessive as is required under Commerce's precedents. *Id.* Hyundai Steel demonstrated how its port usage rights are intended to serve as the vehicle through which Hyundai Steel can recoup its costs of constructing the port, and are not a gift-like transfer of funds that provide a benefit to Hyundai Steel. *Id.* at 8-17. Alternatively, Hyundai Steel argued that should Commerce continue to treat the port usage rights as countervailable benefits, it should subtract the amount of amortized wharf usage rights applicable to the 2018 POR. *Id.* at 17-18.

9

21. Second, Hyundai Steel argued that Commerce erred in countervailing Hyundai Steel's sewerage fees because Hyundai Steel was charged proportionally with its use of the public sewerage system, which is consistent with the statutes and regulations in Korea. *Id.* at 18-23. Thus, Hyundai Steel argued that Commerce erred in determining that the sewage fee reductions constituted a financial contribution in the form of "revenue foregone" and in determining that there was a benefit conferred to Hyundai Steel. *Id.* at 23-25. Finally, Hyundai Steel argued that should Commerce continue to treat the fee reductions as countervailable, it should find that they were tied to non-subject merchandise because Hyundai Steel does not produce subject merchandise at its Incheon facility. *Id.* at 25-27. Under the "tying" regulation, if a subsidy is tied to the production or sale of a particular product, then the subsidy will only be attributed to that product. *See* 19 C.F.R. § 351.525(b)(5). If the subsidy is tied to a non-subject product then no benefit is calculated or attributed to the respondent.

22. On August 20, 2021, Commerce issued the *Final Results*, which were published in the *Federal Register* on August 26, 2021. *See* ¶ 1, *supra*. In the *Final Results*, Commerce continued to find that Hyundai Steel's port usage rights and sewerage fee reductions were countervailable. *Final Results IDM* at Comments 2 and 3. Regarding Hyundai Steel's port usage rights, Commerce denied that Hyundai Steel's right to collect usage fees should be viewed in light of Hyundai Steel's substantial construction costs and stated that its determination in the instant proceeding was consistent with its precedents. *Id.* at 19-23. Commerce further stated that "consistent with {its} practice," it would not "subtract/offset the amortized wharf usage applicable to the 2018 POR from the benefit." *Id.* at 23.

23. Commerce also rejected Hyundai Steel's arguments regarding its sewerage usage fees, quoting in its entirety the reasoning it gave for rejecting similar arguments in *Certain Cut-*

*to-Length Carbon-Quality Steel Plate From the Republic of Korea: Final Results of Countervailing Duty Administrative Review; Calendar Year 2018*, 85 Fed. Reg. 84,296 (Dep't Commerce Dec. 28, 2020), and accompanying Issues and Decision Memorandum at Comment 6.[4]  As it did in that case, Commerce stated that none of the legal provisions in Korea cited by the GOK "prescribe for the situation under which qualified Hyundai Steel qualified for its sewerage fee reduction, or the amount of the reduction received by Hyundai Steel."[5]  *Final Results IDM* at 26.  Commerce found that these legal provisions "do not explicitly provide that entities may claim a reduction in their overall water bill with regard to the amount of sewage water discharged" and, therefore, contrary to the GOK's explanation, "the basis under which Hyundai Steel received a sewerage fee reduction" was an "arrangement unique to {Hyundai Steel} and not otherwise contemplated under the provisions of Korean law on our record."  *Id.*  Commerce therefore concluded that the reduction of Hyundai Steel's sewerage fees constitutes revenue foregone and is *de facto* specific.  *Id.* (citing 19 U.S.C. § 1677(5)(E) & (5A)(D)(iii)(I)).  Finally, Commerce declined to find that Hyundai Steel sewerage usage fees were tied to non-subject merchandise because Hyundai Steel's application and approval documentation do not "explicitly indicate that an intended link to the particular products or operations was known to the government authority" at the time of approval.  *Id.* at 27.

24.     Thus, in the *Final Results*, Commerce continued to calculate an *ad valorem* subsidy rate of 0.51 percent for Hyundai Steel.  86 Fed. Reg. at 47,622.  This was just over the *de*

---

[4] Commerce's determination in this case is currently under appeal in this court.  *See* Complaint, *Hyundai Steel Co. v. United States*, No. 21-00012 (Ct. Int'l Trade Jan. 26, 2021), ECF No. 11.

[5] Specifically, Commerce referenced "Article 65(1) of the Sewerage Act, Article 36(2) of the Enforcement Decree of the same Act, Article 14(1) and Article 21(1)(7) of the Incheon Metropolitan City Ordinance on Sewerage System Usages, and Article 9 of the Enforcement Decree of the same Ordinance."  *Final Results IDM* at 26.

*minimis* threshold, as stated above.

25. This appeal followed.

## STATEMENT OF CLAIMS

### Count One

26. Paragraphs 1 to 25 are incorporated by reference.

27. Commerce's determination that Hyundai Steel's port usage rights constitutes a countervailable subsidy and provides a countervailable benefit is unsupported by substantial evidence and is otherwise not in accordance with law.

### Count Two

28. Paragraphs 1 to 27 are incorporated by reference.

29. Commerce's determination that Hyundai Steel's sewerage fee reductions constitute a countervailable subsidy and provide a countervailable benefit is unsupported by substantial evidence and is otherwise not in accordance with law.

**DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Hold Commerce's *Final Results* in the January 1, 2018 to December 31, 2018 administrative review of the CVD order on HR from Korea is unsupported by substantial evidence and otherwise not in accordance with law;

b. Remand this case to Commerce for a re-determination consistent with the judgment and findings of this Court; and

c. Grant such other relief as the Court shall deem just and proper.

Respectfully submitted,

/s/ Brady W. Mills
Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins

MORRIS MANNING & MARTIN LLP
1401 Eye Street, NW, Suite 600
Washington, D.C. 20005

*Counsel to Plaintiff Hyundai Steel Company*

Dated:  October 21, 2021