**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| HYUNDAI STEEL COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Court No. 21-00536 |
| UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | |
| NUCOR CORPORATION, SSAB ENTERPRISES, LLC, and STEEL DYNAMICS, INC., | ) | |
| Defendant-Intervenors. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
FOR JUDGMENT ON THE AGENCY RECORD**

Defendant, the United States, respectfully submits this response to the Rule 56.2 motion

for judgment on the agency record filed by the plaintiff, Hyundai Steel Company (Hyundai

Steel), challenging certain aspects of the final results of the Department of Commerce's 2018

administrative review of the countervailing duty order covering certain hot-rolled steel flat

products (HR steel) from the Republic of Korea.  For the reasons explained below, with the

exception of the single issue for which the defendant requests a voluntary remand, the Court

should sustain the final results as supported by substantial evidence and otherwise in accordance

with law.

STATEMENT PURSUANT TO RULE 56.2

I.      Administrative Determination Under Review

The administrative determination under review is the final results of the administrative

review of the countervailing duty order covering certain HR steel from Korea.  *See Certain Hot-*

*Rolled Steel Flat Products from the Republic of Korea: Final Results of Countervailing Duty*

*Administrative Review, 2018*, 86 Fed. Reg. 47,621 (Dep't of Commerce Aug. 26, 2021) (final

results) (P.R. 177)[1], and accompanying Issues and Decision Memorandum (IDM) (P.R. 176).  The

period of review is January 1, 2018 through December 31, 2018.

II.     Statement Of The Issues

1.      Whether Commerce's determination to countervail the provision of port usage

rights at the port of Incheon program is lawful and supported by substantial evidence.

2.      Whether granting Commerce's request for a voluntary remand is appropriate so

that Commerce may reconsider whether the reduction of sewerage usage fees program is

countervailable, and if appropriate, recalculate the rate assigned to Hyundai Steel.

STATEMENT OF FACTS

On October 3, 2016, Commerce published the countervailing duty order covering HR

steel from Korea.  *See Certain Hot-Rolled Steel Flat Products from Brazil and the Republic of*

*Korea: Amended Final Affirmative Countervailing Duty Determinations and Countervailing*

*Duty Orders*, 81 Fed. Reg. 67,960 (Dep't of Commerce Oct. 3, 2016) (Order).  On October 1,

2019, Commerce published a notice of opportunity to request an administrative review of the

Order.  *See Antidumping and Countervailing Duty Order, Finding, or Suspended Investigation;*

---

[1] Citations to the public record (P.R.) and confidential record (C.R.) refer to the record of the countervailing duty review.  Citations to "Hyundai Steel Br." refer to Hyundai Steel's motion, ECF No. 32.

2

*Opportunity to Request Administrative Review*, 84 Fed. Reg. 52,068 (Dep't of Commerce Oct. 1, 2019).  Commerce received timely requests for an administrative review.  *See* Hyundai Steel Request for Administrative Review (P.R. 1); *see also* Petitioners' Request for Administrative Review (P.R. 2).  On December 11, 2019, Commerce initiated an administrative review of the Order with regard to the producers for which interested parties requested individual review.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 67,712 (Dep't of Commerce Dec. 11, 2019) (initiation notice).

In its initiation notice, Commerce stated that in the event it limited the number of respondents for individual examination, it intended to select respondents based on CBP data for U.S. imports during the period of review.  *Id.*  Following comments by interested parties, Commerce selected Hyundai Steel as the sole mandatory respondent in this administrative review.  *See Certain Hot-Rolled Steel Flat Products from the Republic of Korea:  Preliminary Results of Countervailing Duty Administrative Review, 2018*, 86 Fed. Reg. 10,533 (Dep't of Commerce Feb. 22, 2021) (Preliminary Results) (P.R. 156), and accompanying Preliminary Decision Memorandum (PDM) (P.R. 146) at 2.

During the review, Hyundai Steel and the government of Korea (GOK) responded to several questionnaires issued by Commerce.  *See* PDM at 2-3 (citing questionnaires issued between March and April 2020, and July 2020 through January 2021) (P.R. 146); *see also* IDM at 2 (citing questionnaires issued in April and May 2021)

In its preliminary results, Commerce  "preliminarily determine{d} a countervailable subsidy rate of 0.01 percent *ad valorem* for Hyundai Steel under" the Provision of Port Usage Rights at the Port of Incheon program.  PDM at 17-18 (P.R. 146).  Similarly, with respect to the Reduction for Sewerage Usage Fees program, Commerce "preliminarily determine{d} a net

subsidy rate of 0.01 percent ad valorem for Hyundai Steel." PDM at 15-16 (P.R. 146).

Commerce calculated a preliminary net countervailable subsidy rate for Hyundai Steel of 0.51

percent. *Preliminary Results*, 86 Fed. Reg. at 10,534 (P.R. 156).

In administrative case and rebuttal briefs, parties raised arguments regarding both

programs. As it relates to the provision of port usage rights at the port of Incheon program, a

petitioner, Nucor Corporation (Nucor), argued that, in line with prior practice, Commerce should

continue to find that the GOK's provision of port usage rights provides a countervailable benefit.

IDM at 18-19 (citing Nucor's Rebuttal Brief at 2-7 (P.R. 173; C.R. 195)). In contrast, Hyundai

Steel argued that the GOK's provision of port usage rights does not provide a countervailable

benefit because the usage rights represent a repayment of a debt and were not excessive. IDM at

17-18 (citing Hyundai Steel's Case Brief at 2-17 (P.R. 170; C.R. 191)). Regarding the sewerage

usage fees program, Hyundai Steel argued that it neither represented a "financial contribution" or

conferred a benefit as defined in the statute. IDM at 23-24 (citing Hyundai Steel Case Brief at

18-23 (P.R. 170; C.R. 191)). Still, Nucor argued that Commerce should continue to find that the

reduction in sewerage fees constitutes a countervailable subsidy. IDM at 24-25 (citing to

Nucor's Rebuttal Brief at 7-12 (P.R. 173; C.R. 195)).

In the final results, Commerce continued to find both programs countervailable. IDM at

17-27. As such, Commerce calculated a final subsidy rate for Hyundai Steel of 0.51 percent.

*See Final Results*, 86 Fed. Reg. at 47,622.

ARGUMENT

I.      Standard Of Review

In reviewing Commerce's antidumping or countervailing duty determinations, "the Court

of International Trade must sustain 'any determination, finding or conclusion' found by

Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)).

A party challenging a determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted). That is because "{s}ubstantial evidence" is defined as "more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The Court must affirm the agency's determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from the agency's conclusion. *Nippon Steel*, 458 F.3d at 1352. Even if it is possible to draw two inconsistent conclusions from the evidence contained in the record, this does not mean that Commerce's findings are not supported by substantial evidence. *Id.*; *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

II.    Commerce's Determination To Countervail The Port Of Incheon Program Is Lawful And Supported By Substantial Evidence

The Court should sustain Commerce's final results because it lawfully countervailed the port of Incheon program.[2] Under this program, the GOK entered into a build-transfer-operate agreement with its private partner, Hyundai Steel, for construction of the Incheon wharf. PDM at 16-17 (P.R. 146). Hyundai Steel financed the construction of the Incheon wharf, and pursuant to Korean law, upon completion, ownership of the port facility reverted to the GOK. PDM at 17 (P.R. 146). In return, Hyundai Steel received money from the GOK between 2004 and 2007 for

---

[2] The Court is currently considering a largely identical issue in *Hyundai Steel Co. v. United States*, Court No. 20-03799.

certain construction costs, and the GOK bestowed the right to use the Incheon wharf to Hyundai Steel for a specific period of time without having to pay port usage fees, as well as the right of Hyundai Steel to collect certain usage fees from third-party users.  PDM at 16-17 (P.R. 146). Moreover, Hyundai Steel built the port for its own benefit and use, and no other party had used the harbor to date.  IDM at 20; *see also* Hyundai Steel Br. at 3

Commerce determined that the program provided a financial contribution because the fees that the GOK gave Hyundai Steel the right to collect – berthing income and harbor facility usage fees – would otherwise have been collected by the GOK absent the agreements between the parties.  Thus, the fees represented revenue foregone by the GOK within the meaning of 19 U.S.C. § 1677(5)(D)(ii).  *See* 19 U.S.C. § 1677(5)(D)(ii) ("[t]he term "financial contribution" means … foregoing or not collecting revenue that is otherwise due, such as granting tax credits or deductions from taxable income."); *see also* PDM at 17-18 (P.R. 146); IDM at 17 .

Commerce also determined the program to be specific because "the actual recipients … are limited in number."  19 U.S.C. § 1677(5A)(D)(iii)(I).  Further, Commerce determined that a benefit exists under 19 U.S.C. § 1677(5)(E) in the amount of the fees that Hyundai Steel was entitled to collect under the operating agreement with the GOK.  19 U.S.C. § 1677(5)(E).

Hyundai Steel does not challenge Commerce's finding regarding financial contribution or specificity.  Instead, Hyundai Steel argues that Commerce's determination that the GOK's provision of port usage rights provides a countervailable benefit is contrary to law because the program does not provide an "excessive benefit," because any benefits are received as a repayment of a debt.  *See* Hyundai Steel Br. at 10-25.

However, as set forth below, Commerce's determination that non-payment of port usage fees constitutes a countervailable benefit is supported by substantial evidence and in accordance with law.  IDM 19-23.

A.  Commerce Correctly Relied On The Federal Circuit's Precedent In *AK Steel* When Completing Its Benefit Analysis

In determining whether the non-payment of port usage fees constitute a countervailable benefit, and in evaluating Hyundai Steel's argument that the non-payment of port usage fees are repayment for the cost of construction of the port, Commerce found that the rationale set forth by the Court of Appeals for the Federal Circuit in *AK Steel Corp. v. United States*, 192 F.3d 1367 (Fed. Cir. 1999) was "directly applicable."  IDM at 20.  *AK Steel* confirms the lawfulness of Commerce's treatment of the non-payment of port usage fees here.

In *AK Steel*, the Federal Circuit sustained Commerce's determination to countervail respondent POSCO's exemption from dockyard fees, or user fees, which the GOK would normally charge for the use of 15 berths in the Kwangyang Bay Industrial Estate (KBIE) port facility.  *See AK Steel*, 192 F.3d at 1382.  The program also gave POSCO the right to collect fees up to the amount of the investment, and as reported by POSCO and the government of Korea, POSCO was the only company located in the KBIE that did not pay dockyard fees for the use of the berths.  *See Final Affirmative Countervailing Duty Determinations and Final Negative Critical Circumstances Determinations: Certain Steel Products from Korea*, 58 Fed. Reg. 37,338, 37,347-348 (Dep't of Commerce July 9, 1993).

As with the present case, Commerce, in *AK Steel*, determined that a countervailable benefit was conferred by the exemption from fees regardless of whether the port was built by the GOK or the respondent company.  *AK Steel*, 192 F.3d at 1379; IDM at 20; *see also Steel Products from Korea*, 58 Fed. Reg. at 37,348.  The court of appeals sustained Commerce's

rejection of arguments that the exemptions granted by the GOK to POSCO were a form of

reimbursement for building and paying for the port berths that POSCO was required to cede

back to the GOK, agreeing that "that if the Korean government had built the port berths, instead

of having them ceded by POSCO, Commerce would have 'countervailed the construction

funding as a specific infrastructure benefit…'"  *AK Steel Corp.*, 192 F.3d at 1382; *see also Steel*

*Products from Korea*, 58 Fed. Reg. at 37,348.

Commerce determined that the rationale set forth in *AK Steel* was "directly applicable"

when it rejected Hyundai Steel's argument here that the non-payment of port usage fees are

repayment for the cost of construction of the port.  IDM at 20.  In response, Hyundai Steel makes

two arguments: (1) that Commerce ignored subsequent agency practice which applied an

"excessive benefit" standard, and (2) *AK Steel* is distinguishable because it involved a review

that was not under the Harbor Act.  Hyundai Steel Br. at 18.  Hyundai's attempts to distinguish

*AK Steel* are unpersuasive.

Hyundai Steel's first argument is that Commerce ignored subsequent agency practice

which applied an "excessive benefit" standard.  Commerce has not changed its practice, but even

if it had, it is always free to change its interpretation so long as it provides a reasoned

explanation for such change.  *SKF USA Inc. v. United States*, 630 F.3d 1365, 1373 (Fed. Cir.

2011) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S.

29, 42 (1983)). Moreover, Hyundai Steel's argument is based upon a misreading of the

determination it relies upon, *Final Affirmative Countervailing Duty Determination: Certain*

*Cold-Rolled Carbon Steel Flat Products From the Republic of Korea*, 67 Fed. Reg. 62,102

(Dep't of Commerce Oct. 3, 2002), and accompanying Issues and Decision Memorandum at

Comment 11 (*CR from Korea 2000*).

In *CR from Korea 2000*, Commerce explained that it had previously found that the Harbor Act was not "specific" within the meaning of 19 U.S.C. § 1677(5A)(D)(iii), as it was not limited in number; rather, it was open to a large range of industries. *Id.* However, Commerce decided to revisit the prior specificity finding, in the context of the excessive exemption period provided to Dongbu. *Id.* In doing so, Commerce found that the GOK was providing a financial contribution in the form of revenue foregone for an extended time period, up to 70 years, in a manner which was *specific* to Dongbu. *Id.* (emphasis added). Separately, Commerce determined that the benefit is the full amount of the yearly exemption provided to Dongbu under the program. *Id.* Hence, Commerce's consideration of "excessive benefit" in *CR from Korea 2000* was relevant to specificity, and does not represent a change in agency practice with respect to consideration of whether a benefit has been conferred.

As noted above, Hyundai Steel does not challenge Commerce's decision to countervail the port of Incheon program with respect to specificity, only its benefit determination. Further, substantial evidence demonstrates that Hyundai Steel built the port, not for a public good or any governmental functions, but instead has the right to use the port for *its own use* for an extended period of time. IDM at 20-22 ; *see also* Hyundai Steel Br. at 3 ("no other party had used the harbor"). Hence, Commerce lawfully found the program to be specific because the actual recipients were limited in number.

Hyundai Steel's second argument – that *AK Steel* did not involve a review of the Harbor Act, likewise fails. Hyundai Steel does not attempt to demonstrate that the program in *AK Steel* does not operate in the same manner as the port of Incheon program in the current case; it does not. Instead, by focusing only on the names of the two programs and avoiding discussion of the operation of the programs, Hyundai Steel draws only a legally irrelevant distinction.

In *AK Steel*, POSCO received a benefit from the exemption from dockyard fees. 192 F.3d at 1382. POSCO received this exemption because it built and paid for fifteen of the eighteen port berths at the KBIE. *Id.* However, Korean law required POSCO to cede ownership of the fifteen berths to the GOK upon completion. *Id.* The GOK sought to reimburse POSCO by exempting POSCO from dockyard fees that all other companies using the port were required to pay. *Id.* Further, that program also gave POSCO the right to collect fees up to the amount of the investment. *See Steel Products from Korea*, 58 Fed. Reg. at 37,347.

Similarly, in the present case, Hyundai Steel incurred construction costs for building the port, which under Korean law it had to cede back to the GOK. IDM at 19; *see also* Hyundai Steel Br. at 3. Once the port was built, Hyundai Steel used the port to transport inputs free of charge, and it has the right to collect port usage fees to compensate it for the costs it incurred in building the port. *Id*. The record further demonstrates that the GOK is not collecting fees that it is entitled to collect, but instead awarded Hyundai Steel the port usage rights and the right to collect usage fees from third parties following construction of the port. IDM 19-22 (P.R. 176); *see also* GOK January 21, 2021 Supplemental Questionnaire Response at 7-8 and 16-17 (P.R. 129; C.R. 163).

Both this matter and *AK Steel* thus concern programs in which private companies incurred the costs of building infrastructure (*i.e.,* port berths and wharfs) which upon completion they had to cede back to the GOK. In return, the GOK awarded these companies use of the infrastructure they built for an extended period of time by forgoing fees which the GOK would otherwise have the right to collect. Thus, while the names of the programs may differ, the manner in which they function is the same. Hence, this Court should sustain Commerce's

determination regarding the port of Incheon as lawful and consistent with the Federal Circuit's

opinion in *AK Steel*.

      B.   Hyundai Steel's Reliance On *GOSL* Is Misplaced

In support of its argument that the port usage rights it received are a repayment of a debt

and not a countervailable benefit, Hyundai Steel draw comparisons to this Court's findings in

*Government of Sri Lanka v. United States*, 308 F. Supp. 3d 1373, 1383 (Ct. Int'l Trade 2018)

(*GOSL*).  *See* Hyundai Steel Br. at 19-25.  Hyundai Steel argues that this Court's holding in

*GOSL* that "repayments 'satisf{y} neither the statutory definition, nor the regulatory

interpretation of what constitutes a benefit'" supports the conclusion that the port usage rights it

received under the port of Incheon program do not provide a countervailable benefit.  *See*

Hyundai Steel Br. at 22 (citing *GOSL*, 308 F. Supp. 3d at 1384).  Consistent with the fact that the

Federal Circuit sustained Commerce's decision to reject this very same argument in relation to a

similar program in *AK Steel*, 192 F.3d 1379, Commerce lawfully determined that *GOSL* is not

applicable to the facts of this case.

As Commerce explained, the Guaranteed Price Scheme for Rubber (GPS) program under

consideration in *GOSL* is not comparable to the port of Incheon program currently before the

Court.  IDM at 22 .  The GPS program was implemented to support small-scale rubber farmers,

by facilitating payments to these farmers via buyers of natural rubber such as the respondents in

*GOSL*.  IDM at 21 .  However, in the present case, neither Hyundai Steel nor the GOK argue that

the program at issue was implemented for the purpose of supporting other beneficiaries; indeed

Hyundai Steel concedes "no other party had used the harbor."  IDM at 22 ; *see also* Hyundai

Steel Br. at 3.

Furthermore, *GOSL* characterized the transactions at issue as resulting in a detriment, rather than a benefit, to the respondents.  IDM at 23 ; *see also GOSL*, 308 F. Supp 3d at 1382. Respondents in *GOSL* were required to buy natural rubber at a guaranteed price for the benefit of the small farmers, and in turn the government reimbursed respondents for the difference between the guaranteed price and the average rubber price.  IDM at 23 .  Such a feature does not exist in the current port of Incheon program – the GOK did not require Hyundai Steel to build a port at a certain cost, nor did the GOK require Hyundai Steel to build a port to benefit other recipients. IDM at 23 .  To the contrary, the transaction at issue is not detrimental to Hyundai Steel because Hyundai Steel benefitted from building the port for its own use for an extended period of time, and it also received initial reimbursements from the GOK between 2004 and 2007.  IDM at 21-23 ; *see also* PDM at 17 (P.R. 146).

*GOSL* in not applicable to the facts of this case and Commerce's determination is otherwise supported by substantial evidence.  This Court should sustain Commerce's final results.

III.    The Court Should Grant The Request For A Voluntary Remand For Commerce To Reconsider Its Determination With Regard To The Sewerage Usage Fees Program, And, If Appropriate, The Rate Assigned To Hyundai Steel

As set forth below, Commerce respectfully requests a partial voluntary remand in order to reconsider its determination to countervail the sewerage usage fees program.

A.  Legal Standard

Commerce may ask the Court to remand a matter, without confessing error, so that Commerce may consider its prior position.  *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001).  In *SKF USA*, the court outlined multiple scenarios in which an agency may seek a remand: (a) to reconsider its decision because of intervening events outside of the

agency's control; (b) in the absence of intervening event, the agency may request a remand, without confessing error, to reconsider its previous position; and (c) because it believes that its original decision was incorrect on the merits and it wishes to change the result. *Id.* at 1028.

A voluntary remand to an agency is generally appropriate if the agency's concern is substantial and legitimate. *Id.* at 1029; *see also Ad Hoc Shrimp Trade Action Committee v. United States*, 882 F. Supp. 2d 1377, 1381 (Ct. Int'l Trade 2013); *SeAH Steel Corp. v. United States*, 704 F. Supp. 2d 1353, 1378 (Ct. Int'l Trade 2010); *Shakeproof Assembly Components Div. of Illinois Tool Works, Inc. v. United States*, 412 F. Supp. 2d 1330, 1338 (Ct. Int'l Trade 2005) (granting a request for voluntary remand, recognizing the "presumption of governmental good faith" absent "'well-nigh irrefragable proof' of bad faith.").

"{C}oncerns are considered substantial and legitimate when (1) Commerce supports its request with a compelling justification, (2) the need for finality does not outweigh the justification, and (3) the scope of the request is appropriate." *See Baroque Timber Industries (Zhongshan) Co., Ltd. v. United States*, 925 F. Supp. 2d 1332, 1339.  Moreover, clarifying and correcting a potentially inaccurate determination is a compelling justification for voluntary remand. *Id.*  When the agency seeks remand to correct a mistake or address some other substantial and legitimate concern, it is far more sensible for a court to defer to the agency whose expertise consists of administering the statute. *See Gleason Indus. Prods., Inc. v. United States*, 31 C.I.T. 393, 396 (2007).

B. Argument

In the final results, Commerce countervailed the reduction of sewerage fees program, relying in part on the rationale that Hyundai Steel did not qualify for a reduction in its sewerage fees on the basis of any criteria listed in the Incheon Metropolitan City Ordinance.  IDM at 26 .

Commerce determined that Hyundai Steel's reduction for sewerage fees from the GOK constituted a countervailable subsidy because the fee reduction qualified as a financial contribution within the meaning of 19 U.S.C. § 1677(5)(D), and conferred a benefit within the meaning of 19 U.S.C. § 1677(5)(E).  IDM at 25-27 .  Moreover, Commerce determined that because the record indicates that the basis for which Hyundai Steel qualified for a reduction in sewerage fees was not granted to any other companies, the program was *de facto* specific within the meaning of 19 U.S.C. 1677(5A)(D)(iii).  *Id.*; PDM at 15-16 (P.R. 146).  As such, Commerce assigned Hyundai Steel a program specific subsidy rate of 0.01 percent *ad valorem*.  IDM at 7 .

Hyundai Steel challenges Commerce's determination to countervail this program, arguing, among other things, that Hyundai Steel received no financial contribution because the GOK did not forego any revenue otherwise due.  Hyundai Steel Br. at 35.  However, Commerce, having examined Hyundai Steel's use of the program in subsequent proceedings, has developed an increased understanding of the program and the underlying Korean law that governs the reduction of sewerage fees.  In light of this increased understanding of the program and law, Commerce now requests a voluntary remand to reconsider the countervailability of this program in the present case.  Specifically, Commerce will re-evaluate whether – based on its new understanding of Korean law – Hyundai Steel qualifies for a reduction.

This request is in line with prior motions for voluntary remand on this same program. *See Hyundai Steel Co. v. United States,* Court No. 21-012, ECF No. 36; *see also Hyundai Steel Co. v. United States,* Court No. 21-304, ECF No. 25.  Notably, the Court granted both requests for voluntary remand to reconsider Hyundai Steel's reduction for sewerage fees from the government of Korea.  *See Hyundai Steel Co. v. United States,* Court No. 21-012, ECF No. 37; *see also Hyundai Steel Co. v. United States,* Court No. 21-304, ECF No. 26.

14

As this Court has held, a remand is appropriate where "(1) Commerce supports its request with a compelling justification, (2) the need for finality does not outweigh the justification, and (3) the scope of the request is appropriate." *Baroque Timber,* 925 F. Supp. 2d at 1339. Each factor is satisfied here. First, the Government has a compelling justification for its request because Commerce wishes to further consider the reduction of sewerage fees program that was countervailed in the final results. IDM at 23-27 . Next, the need for finality does not outweigh the justification. A remand to Commerce to further evaluate its decision may provide the relief plaintiff requested in its complaint with regard to this program. Thus, granting this request is appropriate because a remand on this issue may allow Commerce to "cure the very legal defects asserted by plaintiffs challenging federal action." *Citizens Against the Pellissippi Parkway v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004) (finding the district court abused its discretion by not granting motion for voluntary remand for agency to address error alleged by plaintiff).

Finally, the scope of the request is appropriate because, as explained above, Commerce's understanding of the program and of the underlying Korean law that governs the reduction of sewerage fees has expanded. Because Commerce has a better understanding of the program and how sewerage fees can be reduced in certain circumstances, defendant requests a remand in part to allow Commerce to reconsider Hyundai Steel's use of this program. Thus, there is a "substantial and legitimate" justification for this Court to grant a voluntary remand on this issue.

Should the Court determine a remand is warranted and grant the request, the appropriate action is for the Court to remand to Commerce for further proceedings without directing a particular outcome. *See, e.g., Nippon Steel Corp. v. United States*, 345 F.3d 1379, 1381-82 (Fed. Cir. 2003); *see also Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1275 (Fed. Cir. 2012). Should the Court grant our request, we respectfully propose that the Court provide 90 days for

Commerce to submit its remand results to the Court, and permit Hyundai Steel to file comments

to the remand redetermination with the Court within 30 days after Commerce files its remand

redetermination, with any response to those comments due 30 days thereafter.

CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's final results

with respect to the countervailability of the port of Incheon program.  We also respectfully

request that the Court grant our motion for voluntary remand so that Commerce can reconsider

its determination with regard to the reduction of sewerage usage fees program.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

OF COUNSEL:                                         s/Kelly A. Krystyniak
HENDRICKS VALENZUELA               KELLY A. KRYSTYNIAK
Attorney                                                  Trial Attorney
U.S. Department of Commerce            U.S. Department of Justice
Office of the Chief Counsel for Trade    Civil Division
   Enforcement and Compliance           Commercial Litigation Branch
1401 Constitution Avenue, NW             P.O. Box 480
Washington, D.C. 20230                       Ben Franklin Station
Tel: (240) 449-5852                             Washington D.C. 20044
Email: Hendricks.Valenzuela@trade.gov   Tel: (202) 307-0163
                                                             Fax: (202) 305-7644
                                                             Email:Kelly.A.Krystyniak@usdoj.gov

June 16, 2022                                         Attorneys for Defendant

CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limitation of Court of International

Trade Standard Chambers Procedures § 2(B)(1) and contains approximately 4,783 words.  In

preparing this certificate of compliance, I have relied upon the word count function of the word

processing system used to prepare the brief.

/s/ Kelly A. Krystyniak