## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:   THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| HYUNDAI STEEL COMPANY,<br>          Plaintiff,<br><br>     v.<br><br>UNITED STATES,<br>          Defendant,<br><br>     and<br><br>NUCOR CORPORATION, SSAB ENTERPRISES, LLC, and STEEL DYNAMICS, INC.,<br>          Defendant-Intervenors. | Court No. 21-00536 |

**DEFENDANT'S COMMENTS IN SUPPORT OF REMAND REDETERMINATION**

OF COUNSEL:

HENDRICKS VALENZUELA
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
   Enforcement and Compliance
1400 Constitution Avenue, NW
Washington, D.C. 20230
Tel: (240) 449-5852
Email: Hendricks.Valenzuela@trade.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

SOSUN BAE
Senior Trial Counsel
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7568
Fax: (202) 305-7644
Email: Sosun.Bae@usdoj.gov

June 1, 2023                                    Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

DEFENDANT'S COMMENTS IN SUPPORT OF REMAND REDETERMINATION ..... 1

BACKGROUND ..... 2

I. Commerce's Final Results ..... 2

II. The Court's Remand Order ..... 3

III. Remand Results ..... 3

ARGUMENT ..... 4

I. Standard Of Review ..... 4

II. Commerce's Remand Results Comply With The Remand Order, Are Lawful, And Are Supported By Substantial Evidence ..... 4

A. The Relevant Statute And Regulations Support Commerce's Determination That Analysis Of The Adequacy Of Renumeration Does Not Apply To Revenue Forgone Programs ..... 5

B. Commerce Considered The Conditions Of Purchase Or Sale ..... 9

C. Commerce Has No "Excessive Benefit Standard" ..... 11

CONCLUSION ..... 13

## TABLE OF AUTHORITIES

### CASES

*AK Steel Corp. v. United States*,
   192 F.3d 1367 (Fed. Cir. 1999) ...................................................................................5

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938) .....................................................................................................4

*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (1996) .....................................................................................................4

*Hyundai Steel Co. v United States*,
   615 F. Supp. 3d 1351 (Ct. Int'l Trade 2023) ........................................................1, 3, 8

*MacLean-Fogg Co. v. United States*,
   100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ................................................................4

*Nucor Corp. v. United States*,
   927 F.3d 1243 (Fed. Cir. 2019) ...................................................................................7

*SmithKline Beecham Corp. v. Apotex Corp.*,
   439 F.3d 1312 (Fed. Cir. 2006) .................................................................................10

### STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................................................................4

19 U.S.C. § 1677(5)(A)(D)(iii)(I) ...........................................................................................3

19 U.S.C. § 1677(5)(C) ................................................................................................... 10, 11

19 U.S.C. § 1677(5)(D)(ii) ..................................................................................................2, 8

19 U.S.C. § 1677(5)(D)(ii)-(iii) ..............................................................................................6

19 U.S.C. § 1677(5)(D)(ii)-(iv) ..............................................................................................5

19 U.S.C. § 1677(5)(D)(iii) .....................................................................................................8

19 U.S.C. § 1677(5)(E) .......................................................................................................2, 5

19 U.S.C. § 1677(5)(E)(iv) ............................................................................................. 5, 6, 7

19 U.S.C. § 1677(6) ...........................................................................................................9, 10

## REGULATIONS

19 C.F.R. § 351.503(a) ..........................................................................................................7

19 C.F.R. § 351.503(b) .......................................................................................................7, 8

19 C.F.R. § 351.503(b)(1) .....................................................................................................7

19 C.F.R. § 351.503(c) ................................................................................................... 10, 11

19 C.F.R. § 351.504 ...............................................................................................................7

19 C.F.R. § 351.511................................................................................................................7

## FEDERAL REGISTER NOTICES

*Countervailing Duties*,
   63 Fed. Reg. 65,348 (Dept. of Commerce Nov. 25, 1998)......................................................10

*Certain Cold-Rolled Carbon Steel Flat Products from the Republic of Korea*,
   67 Fed. Reg. 62,102 (Dept. of Commerce Oct. 3, 2002)..........................................................11

*Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea,*
   78 Fed. Reg. 55241 (Dept. of Commerce Sept. 10, 2013) .......................................................12

*Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea*,
   79 Fed. Reg. 5,378 (Dept. of Commerce Jan. 31, 2014)).  .......................................................12

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
   84 Fed. Reg. 67,712 (Dep't of Commerce Dec. 11, 2019).........................................................2

*Certain Hot-Rolled Steel Flat Products from the Republic of Korea*,
   86 Fed. Reg. 10,533 (Dep't of Commerce Feb. 22, 2021) ........................................................2

*Certain Hot-Rolled Steel Flat Products from the Republic of Korea*,
   86 Fed. Reg. 47,621 (Dep't of Commerce Aug. 26, 2021) ....................................................... 2

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

|  |  |
|---|---|
| HYUNDAI STEEL COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> and ) <br> ) <br> NUCOR CORPORATION, SSAB ) <br> ENTERPRISES, LLC, and STEEL ) <br> DYNAMICS, INC., ) <br> ) <br> Defendant-Intervenors. ) | Court No. 21-00536 |

## **DEFENDANT'S COMMENTS IN SUPPORT OF REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to comments filed by plaintiff Hyundai Steel Company (Hyundai Steel).  *See* Hyundai Steel Cmts., ECF Nos. 50-51. These comments concern the Department of Commerce's remand redetermination, issued pursuant to this Court's opinion and remand order in *Hyundai Steel Co. v United States*, 615 F. Supp. 3d 1351 (Ct. Int'l Trade 2023) (remand order).  *See* Final Results of Redetermination Pursuant to Court Remand, April 7, 2023 (remand results), ECF No. 48-1 (Remand P.R. 7).[1] Because Commerce complied with the Court's remand order, and the remand results are

---

[1]  Citations to the public record "P.R. _" and confidential record "C.R. _" refer to the underlying administrative review record.  Citations to "Remand P.R._" and "Remand C.R._" refer to the public and confidential record of the remand redetermination.

supported by substantial evidence and accord with the law, we respectfully request that the Court sustain Commerce's remand results and enter judgment for the United States.

BACKGROUND

I.   Commerce's Final Results

On December 11, 2019, Commerce initiated an administrative review of the countervailing duty order covering certain hot-rolled steel flat products (hot-rolled steel) from the Republic of Korea (Korea).  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 67,712 (Dep't of Commerce Dec. 11, 2019) (initiation notice).  Commerce selected Hyundai Steel for individual review as a mandatory respondent. *See Certain Hot-Rolled Steel Flat Products from the Republic of Korea*, 86 Fed. Reg. 10,533 (Dep't of Commerce Feb. 22, 2021) (preliminary results) (P.R. 156), and accompanying preliminary decision memorandum (PDM) (P.R. 146) at 2.  In its preliminary results, Commerce determined that Hyundai Steel had received countervailable subsidies from the Korean government under various programs, including, as relevant here, the reduction of sewerage fees program and the provision of port usage rights at the port of Incheon program.  *See id*. at 14-18.

Commerce continued to countervail both programs in the final results.  *See Certain Hot-Rolled Steel Flat Products from the Republic of Korea*, 86 Fed. Reg. 47,621 (Dep't of Commerce Aug. 26, 2021) (final results) (P.R. 177), and accompanying issues and decision memorandum (IDM) (P.R. 176).  Regarding the sewerage fees program, Commerce determined that Hyundai Steel had received a financial contribution because its reduced sewerage bill reflected revenue forgone pursuant to 19 U.S.C. § 1677(5)(D)(ii), the program was specific pursuant to section 1677(5A), and Hyundai Steel was conferred a benefit pursuant to section 1677(5)(E).  *See* IDM at 23-27.  Regarding the provision of port usage rights, Commerce determined that Hyundai

Steel had received a financial contribution in the form of revenue forgone, the program was specific pursuant to section 1677(5A)(D)(iii)(I) because the actual recipients were limited in number, and a benefit existed in the form of the fees that Hyundai Steel was entitled to collect. *Id.*

II.  The Court's Remand Order

Hyundai Steel filed a complaint at this Court challenging Commerce's determinations on both programs. *See* Complaint, ECF No. 10. We requested a voluntary remand for Commerce to reconsider the countervailability of the reduction of sewerage fees program but defended Commerce's determination on the provision of port usage rights program. *See* Govt. 56.2 Motion, ECF No. 35. On February 10, 2023, the Court issued a decision granting the request for voluntary remand on the reduction of sewerage fees program to "allow Commerce to cure its own mistakes and reconsider two substantive issued raised by {p}laintiff," and remanded "Commerce's determination that the provision of port usage rights associated with the Port of Incheon program conferred a benefit for further consideration." *Hyundai Steel*, 615 F. Supp. 3d at 1356.

III.  Remand Results

On remand, Commerce reconsidered its determination to countervail the reduction of sewerage fees program and provided additional explanation regarding the provision of port usage rights at the port of Incheon program. *See generally* Remand Results (Remand P.R. 7). After further consideration, Commerce determined that the sewerage fees program is not countervailable. *Id.* at 5-11. After placing public information on the record, Commerce provided additional explanation as to why the provision of port usage rights at the port of Incheon confers a benefit in the form of revenue foregone. *Id.* at 11-27, 30-39. As a result of the

changes made during remand, Commerce calculated an overall subsidy rate for Hyundai Steel of 0.50 percent.  *Id.*

## ARGUMENT

I.    <u>Standard Of Review</u>

    In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law."  *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Substantial evidence may be "less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1996).

II.    <u>Commerce's Remand Results Comply With The Remand Order, Are Lawful, And Are Supported By Substantial Evidence</u>

    No party challenges Commerce's remand results regarding the sewerage fees program. Therefore, and because the remand results comply with the remand order, the Court should sustain Commerce's remand redetermination on that issue.  Commerce also complied with the Court's order to further consider its determination that the provision of port usage rights at the port of Incheon conferred a benefit.

    Consistent with the Court's order, Commerce further considered its determination that the provision of port usage rights associated with the port of Incheon (specifically, Hyundai Steel's right to collect berthing income and harbor facility usage fees) conferred a benefit to Hyundai Steel.  On remand, Commerce provided additional explanation to support its position that its

4

benefit analysis was consistent with 19 U.S.C. § 1677(5)(E) and Commerce's regulations, as well as supported by the record of the review. *See* Remand Results at 11-27, 30-39. While acknowledging that the facts of that case differed from this review, Commerce also relied upon the decision by the Court of Appeals for the Federal Circuit in *AK Steel Corp. v. United States*, 192 F.3d 1367 (Fed. Cir. 1999), in rejecting Hyundai Steel's argument that the exemption of port fees was merely a reimbursement by the Korean government for costs incurred in building the port. Remand Result at 25 (citing *AK Steel*, 192 F.3d at 1379-82).

Hyundai Steel complains that Commerce has "myopically look{ed} at the Port Rights Program in isolation," and has not complied with the Court's directive to consider the context or conditions surrounding the program. Hyundai Steel Cmts. at 3-4. Hyundai Steel also argues that "Commerce fail{ed} to meaningfully grapple with its own description of the benefit determination." *Id.* at 5. These arguments lack merit, and the Court should sustain Commerce's remand redetermination concerning the countervailability of the Port Rights Program.

    A.    The Relevant Statute And Regulations Support Commerce's Determination That Analysis Of The Adequacy Of Renumeration Does Not Apply To Revenue Forgone Programs

Commerce determined the provision of port usage rights to be revenue foregone, *not* less-than-adequate-remuneration (LTAR), and correctly conducted its benefit analysis under the revenue forgone rubric. As Commerce explained, the statute distinguishes between an LTAR analysis and a revenue forgone analysis. *See* Remand Results at 14-15 (citing 19 U.S.C. §§ 1677(5)(E), 1677(5)(D)(ii)-(iv), and Statement of Administrative Action Accompanying the Uruguay Rounds Agreement Act, H.R. Doc. 103-316, Vol. 1 (1994), at 927 (SAA)). The subclause to section 1677(5)(E)(iv) states:

> *{f}or purposes of clause (iv),* the adequacy of remuneration shall be determined in relation to prevailing market conditions *for the good*

5

> *or service being provided or the goods being purchased* in the country in which is subject to the investigation or review. Prevailing market conditions include price, quality, availability, marketability, transportation, and other conditions of purchase or sale. (emphases added).

19 U.S.C. § 1677(5)(E)(iv) (emphasis added). And clause (iv) covers a subsidy benefit analysis only "in the case where goods or services are provided, if such goods or services are provided for less than adequate remuneration[{.}] *Id*. Given this unambiguous language, Commerce reasonably determined that the subclause to section1677(5)(E)(iv), requiring an analysis of the adequacy of remuneration, applies to programs in which a government provides a financial contribution in the provision of goods or services, or the purchase of goods, but does not apply to revenue forgone. *See* Remand Results at 15.

The statutory structure does not support an interpretation that the "adequacy of remuneration" analysis applies to both LTAR and revenue foregone programs. Section 1677(5)(E)(iv), read together with its subclause, states that, "in the case where goods or services are provided," the "adequacy of remuneration shall be determined in relation to prevailing market conditions for the good or service being provided." 19 U.S.C. § 1677(5)(E)(iv). And the immediately preceding subsection, which defines the term financial contribution, identifies financial contributions as "providing good or services" separately from other types of financial contributions as "foregoing or not collecting revenue that is otherwise due." 19 U.S.C. §§ 1677(5)(D)(ii)-(iii). In sum, the statute lists the provision of goods or services as a separate type of financial contribution from revenue forgone, then, in the immediately subsequent subsection, refers to the provision of goods or services in the context of defining certain types of benefits. *See* Remand Results at 33. In light of the statutory language and structure, Commerce

correctly determined that the statutorily defined adequacy of remuneration analysis does not apply to revenue foregone programs. *Id*.

The SAA likewise supports Commerce's reading of the statute. The SAA states that the benefit analysis standards in section 1677(5)(E)(iv) apply to determining the existence and amount of a benefit for less-than-adequate remuneration with regard to the provision of goods or services, and more-than-adequate-remuneration with regard to the procurement of goods. SAA at 927. Nothing in the SAA suggests that a benefit analysis for LTAR should apply to a determine of revenue forgone as well. Remand Results at 15; *see also Nucor Corp. v. United States*, 927 F.3d 1243, 1251 (Fed. Cir. 2019) (noting that "the adequacy-of-remuneration language gives meaning to a provision that asks whether a producer is receiving a 'benefit' from a government authority (through sales of good or services), as part of the definition of what counts as a 'subsidy'") (internal citations omitted).

Finally, Commerce's regulations further confirm that an LTAR benefit analysis is separate and distinct from a revenue forgone benefit analysis. *See* Remand Results at 32-33. 19 C.F.R. § 351.503(a) refers to subsidy programs for which there are "{s}pecific rules" governing the measurement of a benefit. *Id.* at 32. For example, calculation of a benefit for programs relating to the provision of goods or services is subject to 19 C.F.R. § 351.511, while benefit analyses concerning grants are subject to 19 C.F.R. § 351.504. *Id.* Meanwhile, subsidies not covered by specific rules are considered pursuant to 19 C.F.R. § 351.503(b).[2]

---

[2] 19 C.F.R 351.503(b)(1) states "*In general*. For other government programs, the Secretary normally will consider a benefit to be conferred where a firm pays less for its inputs (e.g., money, a good, or a service) than it otherwise would pay in the absence of the government program, or receives more revenues than it otherwise would earn."

Hyundai Steel argues that Commerce referred to section 351.503(b) in its final results and that the language of the regulation "mimics" the LTAR benefit analysis provision in the statute. Hyundai Steel Cmts. at 4-5. But Commerce, when referring to section 351.503(b), was illustrating the wide range of benefit types that can be considered and countervailed, *not* suggesting that the Korean government's provision of port usage rights at the Port of Incheon represents the provision of a good or service. Remand Results at 20 n. 79. Indeed, Commerce explained in its remand redetermination that it was calling attention to the portion of the regulation addressing a company's ability to "receive{} more revenue than it otherwise would earn," because the provision of port usage rights allowed Hyundai Steel to receive additional revenue. Remand Results at 20 n. 79, 31.

Moreover, Commerce can apply either an LTAR analysis *or* a revenue forgone analysis—not both. Remand Results at 16-17, 33-34. As Commerce explained, the criteria it considers in analyzing a subsidy program under an LTAR analysis is different from the criteria considered in analyzing a subsidy program as revenue forgone: in an LTAR analysis, Commerce relies on benchmarks for a comparison, while in a revenue forgone analysis, the benefit is measured by the amount of government fee that otherwise would have been paid in the absence of the program. *Id.* at 16.

Commerce lawfully analyzed the program as revenue forgone[3] and determined that a benefit existed corresponding to the value of Hyundai Steel's right to collect berthing income

---

[3] The record in this review does not support a determination that the financial contribution at issue is subject to section 1677(5)(D)(iii) rather than subsection (5)(D)(iii), and no party has challenged Commerce's finding of the financial contribution as revenue forgone subject to subsection (5)(D)(ii). *See* Remand Results at 17 n. 71; *see also Hyundai Steel Co.*, 615 F. Supp. 3d at 1354 ("Hyundai Steel challenges only Commerce's benefit determination and does not challenge Commerce's determinations as to financial contribution and specificity.").

and harbor facility usage fees, as reported by Hyundai Steel.  *See* Remand Results at 12; *see also* IDM at 17.  The statute and regulations confirm that an analysis of the adequacy of remuneration and prevailing market conditions only applies to benefit analyses stemming from a financial contribution in the form of the provision of a good or service (or the government purchase of a good), not to revenue forgone.  This determination accords with the law and should be sustained.

        B.       <u>Commerce Considered The Conditions Of Purchase Or Sale</u>

While maintaining that the statute does not require it to consider "other conditions of purpose or sale" (an aspect of the LTAR benefit analysis), Commerce still complied with the Court's remand order and considered other ways in which "other conditions of purchase or sale" could impact its benefit determination.  *See* Remand Results at 19-23.  Specifically, Commerce analyzed whether it should consider Hyundai Steel's construction costs as offsetting the benefit provided by the Korean government through the Port program, and concluded that neither the statute nor its regulations required it to consider the costs incurred by Hyundai Steel in constructing the port for purposes of its benefit analysis.  *Id.* at 20-21.

Commerce first considered whether the limited adjustments set forth in 19 U.S.C. §1677(6) required it to deduct port construction costs as part of its benefit analysis.  It determined that "expenses analogous to Hyundai Steel's costs in constructing the port are not included in the list of factors Commerce is directed to consider in calculating the net countervailable subsidy."  *Id.* at 20-21.  While Hyundai Steel ostensibly takes the position that it has never argued that consideration of the construction costs incurred qualify as one of the enumerated deductions from the gross countervailable subsidy amount*, see* Hyundai Steel Cmts.

---

And no party, during this review, argued in favor of an LTAR analysis or submitted benchmark data necessary for Commerce to conduct such an analysis.  Remand Results at 12 n. 51.

9

at 12, it also hedges its position, stating that "to the extent that the statutory offset provision is at all relevant, the provision of port rights would qualify as a 'similar payment paid in order to qualify for, or to receive, the benefit of the countervailable subsidy.'" *Id.* at 12 n. 9 (quoting 19 U.S.C. § 1677(6)).  But "arguments raised in footnotes are not preserved," and the Court should decline to consider Hyundai Steel's undeveloped argument.  *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006).

Commerce also looked to 19 U.S.C. § 1677(5)(C), which states that Commerce "is not required to consider the effect of the subsidy in determining whether a subsidy exists."[4] Remand Results at 21.  The preamble to Commerce's final rule on countervailing duties, as well as the SAA, confirm that Commerce is not required to consider or analyze the effect of the government action.  *See Countervailing Duties*, 63 Fed. Reg. 65,348, 65,361 (Dept. of Commerce Nov. 25, 1998) (*CVD Preamble*); SAA at 926.

The CVD Preamble also provided two examples highlighting the idea that a government action causing the imposition of a cost should be considered separate from a subsidy benefit that offsets that cost.  Remand Results at 35 (citing *CVD Preamble*).  Hyundai Steel erroneously claims that the examples are inapposite to its situation, in particular with regard to its alleged lack of ownership of the port.  Hyundai Steel Cmts. at 13.  As Commerce explained, Hyundai Steel entered into an agreement with the Korean government under which Hyundai Steel would construct a port, and the Korean government would provide various benefits to Hyundai Steel. *Id.*  Commerce reasonably determined that Hyundai Steel's right to operate the port for an

---

[4] This statutory premise is also reflected in 19 C.F.R. § 351.503(c), which states that Commerce "is not required to consider the effect of the government action on the firm's performance, including its prices or output, or how the firm's behavior otherwise is altered." Remand Results at 21.

10

extended period of time amounted to constructive ownership, and that Hyundai Steel is the only party that has used the port to date. *Id.* Accordingly, Commerce found that the reversion of the port to the Korean government does not constitute a meaningful difference from the examples contained in the CVD Preamble. *Id.* Commerce's consideration of conditions of purchase of sale thus satisfies the Court's remand order and should be upheld.

      C.      <u>Commerce Has No "Excessive Benefit Standard"</u>

While the Court did not specifically order Commerce to address the "excessive benefit standard," Commerce did so on remand in response to arguments made by Hyundai Steel. *See* Remand Results at 24-27. In short, and as fully explained in the remand results, Commerce does not have an "excessive benefit standard" or practice. *Id.* at 24.

As Commerce explained, an "excessive benefit standard," as defined by Hyundai Steel, would be inconsistent with both the statute and the regulations regarding benefits conferred by a government provided financial contribution. *See* Remand Results at 24. Once Commerce determines that a benefit exists, it is not required to assess the costs or modified business practices that resulted from the provision of the subsidy; *i.e.,* it is not required to consider the effect of the subsidy. *Id.*; *see also* 19 U.S.C. § 1677(5)(C); 19 C.F.R. § 351.503(c). Commerce need only determine that a benefit exists, *not* whether such benefit is "excessive."

Hyundai Steel's argument that Commerce has an "excessive benefit standard" is based upon prior agency determinations that discussed excessive exemption periods (related to port programs), in the context of *specificity*, not benefit. *See* Remand Results at 25-26. For instance, in *Cold-Rolled Steel from Korea*, Commerce stated that the benefit was the "full amount of the yearly exemption;" it did not indicate that the benefit would be a pro-rated amount to reflect an excessive portion of benefit. Remand Results at 37 (citing *Certain Cold-Rolled Carbon Steel*

11

*Flat Products from the Republic of Korea*, 67 Fed. Reg. 62,102 (Dept. of Commerce Oct. 3, 2002) (*Cold-Rolled Steel from Korea*), and accompanying IDM at Cmt. 11 ("As noted earlier, the benefit is the full amount of the yearly exemption provided to Dongbu under this program")). Similarly, in *CORE from Korea*, Commerce stated that the program provided a benefit "in the amount of the port charges that were not collected." Remand Results at 37 (citing *Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea,* 78 Fed. Reg. 55241 (Dept. of Commerce Sept. 10, 2013) (*CORE from Korea*)*,* and accompanying PDM at 11 ("Further, we preliminarily determine that the exemptions confer a benefit under section 771(5)(E) of the Act in the amount of the port charges that were not collected.") (unchanged in *Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea*, 79 Fed. Reg. 5,378 (Dept. of Commerce Jan. 31, 2014))*.* In neither case did Commerce state that the benefit was somehow negated, adjusted, or otherwise offset to account for only the "excessive" portion of a benefit. *See* Remand Results at 37.

    Even assuming, for the sake of argument, that an "excessive benefit standard" should apply to this case, the outcome would not differ. *See* Remand Results at 27 and 37-38. Hyundai Steel has posited that it is Commerce's practice to find that the governmental provision of port usage rights provides a benefit where the applicable benefit stream lasts longer than the average useful life (AUL) of the underlying asset, and that where the exemption/fee-collection period is equal to or greater than the AUL period, the subsidy is excessive and represents a benefit. *See* Remand Results at 23-24. Here, the agreement between Hyundai Steel and the Korean government provides Hyundai Steel with the right to collect berthing income and harbor facility usage fees for approximately 41 years and 8 months. *See* Remand Results at 27. Hyundai Steel, in its financial statements, considered the intangible asset of "exclusive dock use rights" to have

an estimated useful life of 42 years, and also indicated that buildings, structures, and machinery have estimated useful lives of 15 to 50 years, five to 40 years, and five to 30 years, respectively. *Id.*  Additionally, the class life period for docks and wharves is 20 years.  *Id.* (citing Memorandum, "Placement of New Factual Information on the Record," dated March 2, 2023 (Remand P.R. 1)).  Thus, the record demonstrates that the length of the Hyundai Steel-GOK agreement did, in fact, equal or exceed the applicable AUL period.  Remand Results at 27.

Hyundai Steel now argues that the AUL period "is just one barometer" used to determine whether the provision of rights was so long as to effectively give ownership to the respondent. Hyundai Steel Cmts. at 18.  But, as Commerce pointed out, this argument stands in stark contrast to its prior position that Commerce should rely on AUL periods to conduct the "excessive benefit" analysis.  *See* Remand Results at 38.  And Hyundai Steel does not sufficiently explain how and why other barometers should be used in conducting an analysis under its purported "excessive benefit standard."  Because Commerce's explanation is reasonable and lawful, the Court should sustain the remand redetermination.

## CONCLUSION

For these reasons, we respectfully request that this Court sustain Commerce's remand results and enter judgment in favor of the United States.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
|  | PATRICIA M. MCCARTHY<br>Director |
|  | /s/ Tara K. Hogan<br>TARA K. HOGAN<br>Assistant Director |
| OF COUNSEL:<br>HENDRICKS VALENZUELA<br>Attorney<br>U.S. Department of Commerce<br>Office of the Chief Counsel for Trade<br>    Enforcement and Compliance<br>1401 Constitution Avenue, NW<br>Washington, D.C. 20230<br>Tel: (240) 449-5852<br>Email: Hendricks.Valenzuela@trade.gov | s/Sosun Bae<br>SOSUN BAE<br>Senior Trial Counsel<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>P.O. Box 480<br>Ben Franklin Station<br>Washington D.C. 20044<br>Tel: (202) 305-7568<br>Fax: (202) 305-7644<br>Email: Sosun.Bae@usdoj.gov |
| June 1, 2023 | Attorneys for Defendant |

**CERTIFICATE OF COMPLIANCE**

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that Defendant's Comments In Support Of Remand Redetermination, complies with the word-count limitation. In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare the brief. According to the word count, the brief contains 3,744 words.

/s/Sosun Bae

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| HYUNDAI STEEL COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES, )<br>)<br>Defendant, )<br>)<br>and )<br>)<br>NUCOR CORPORATION, SSAB )<br>ENTERPRISES, LLC, and STEEL )<br>DYNAMICS, INC., )<br>)<br>Defendant-Intervenors. )<br> | Court No. 21-00536 |

## **ORDER**

Upon consideration of the remand redetermination, the comments filed by the parties, the administrative record, and all other pertinent papers, it is hereby

ORDERED that the Department of Commerce's remand results are sustained in all respects, and it is further

ORDERED that judgment is entered in favor of the United States.

_____
Dated: _____                                                                         JUDGE
New York, NY