Slip Op. 23-121

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HYUNDAI STEEL COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>NUCOR CORPORATION, SSAB ENTERPRISES, LLC, and STEEL DYNAMICS, INC.,<br><br>    Defendant-Intervenors. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 21-00536 |

**OPINION AND ORDER**

[Sustaining the U.S. Department of Commerce's remand results in the 2018 administrative review of the countervailing duty order on certain hot-rolled steel flat products from the Republic of Korea.]

Dated: August 21, 2023

Brady W. Mills, Donald B. Cameron, Julie C. Mendoza, R. Will Planert, Mary S. Hodgins, Eugene Degnan, Edward J. Thomas, III, Jordan L. Fleischer, and Nicholas C. Duffey, Morris, Manning & Martin, LLP, of Washington, D.C., for Plaintiff Hyundai Steel Company.

Tara K. Hogan, Assistant Director, and Sosun Bae, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With them on the brief were

Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M. McCarthy, Director.  Of counsel on the brief was Hendricks Valenzuela, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Alan H. Price, Christopher B. Weld, and Theodore P. Brackemyre, Wiley Rein, LLP, of Washington, D.C., for Defendant-Intervenor Nucor Corporation.

Roger B. Schagrin and Jeffrey D. Gerrish, Schagrin Associates, of Washington, D.C., for Defendant-Intervenors SSAB Enterprises, LLC and Steel Dynamics, Inc.

  Choe-Groves, Judge:  Plaintiff Hyundai Steel Company ("Plaintiff" or "Hyundai Steel") filed this action challenging the final results in the 2018 administrative review of the countervailing duty order on certain hot-rolled steel flat products from the Republic of Korea ("Korea").  Certain Hot-Rolled Steel Flat Products from the Republic of Korea ("Final Results"), 86 Fed. Reg. 47,621 (Dep't of Commerce Aug. 26, 2021) (final results of countervailing duty admin. review; 2018); see also Issues and Decision Mem. for the Final Results of the 2018 Admin. Review of the Countervailing Duty Order on Certain Hot-Rolled Steel Flat Products from the Republic of Korea ("Final IDM"), ECF No. 21-5.

  Before the Court are the Final Results of Redetermination Pursuant to Court Remand of the U.S. Department of Commerce ("Commerce") on Certain Hot-Rolled Steel Flat Products from the Republic of Korea, filed pursuant to the Court's remand order in Hyundai Steel Co. v. United States, 47 CIT __, 615 F. Supp. 3d 1351 (2023) ("Hyundai Steel" or "Remand Order").  See Final Results of

Redetermination Pursuant to Court Remand, ECF No. 48-1 ("Remand Results"). This opinion presumes familiarity with the facts as outlined in Hyundai Steel, in which the Court remanded Commerce's determination that the free provision of port usage rights associated with the Port of Incheon Program conferred a benefit and Commerce's benefit and financial contribution determinations related to the Sewerage Usage Fees Program. Hyundai Steel, 47 CIT at __, 615 F. Supp. 3d at 1353.

On remand, Commerce reexamined the Reduction for Sewerage Fees program, determined that the program was not countervailable, and provided further explanation for its determination that the provision of port usage rights at the Port of Incheon conferred a benefit. Remand Results at 39. Commerce changed the final subsidy rate calculation from the previous rate of 0.51% for Hyundai Steel to a new subsidy rate of 0.50%. Id.

Plaintiff Hyundai Steel Company filed comments supporting Commerce's determination of the Reduction for Sewerage Fees program and opposing Commerce's port usage rights determination. Pl. Hyundai Steel Co.'s Cmts. Commerce's Redetermination Pursuant Court Remand, ECF Nos. 50, 51 ("Pl.'s Br."). Defendant United States ("Defendant") filed comments in support of Commerce's Remand Results. Def.'s Cmts. Supp. Remand Redetermination, ECF No. 56 ("Def.'s Br."). Defendant-Intervenors Nucor Corporation, SSAB

Enterprises, LLC, and Steel Dynamics, Inc. filed comments in support of Commerce's Remand Results. Def.-Intervs.' Cmts. Supp. Final Results Redetermination Pursuant Court Remand ("Def.-Intervs.' Br."), ECF No. 55.

For the following reasons, the Court sustains the Remand Results.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting the final results of an administrative review of a countervailing duty order. The Court will hold unlawful any determination found to be unsupported by substantial evidence on the record or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i). The Court also reviews determinations made on remand for compliance with the Court's Remand Order. Ad Hoc Shrimp Trade Action Comm. v. United States, 38 CIT 727, 730, 992 F. Supp. 2d 1285, 1290 (2014), aff'd, 802 F.3d 1339 (Fed. Cir. 2015).

## DISCUSSION

A countervailable subsidy is a financial contribution provided by an authority (a foreign government or public entity) to a specific industry when a recipient within the industry receives a benefit as a result of that contribution. See 19 U.S.C. § 1677(5); see also Fine Furniture (Shanghai) Ltd. v. United States, 748 F.3d 1365, 1369 (Fed. Cir. 2014). Section 1677(5) defines a financial contribution,

in relevant part, to mean "foregoing or not collecting revenue that is otherwise due, such as granting tax credits or deductions from taxable income," "providing goods or services, other than general infrastructure," and "purchasing goods." 19 U.S.C. § 1677(5)(D).

The statute provides that "[a] benefit shall normally be treated as conferred . . . if [] goods or services are provided for less than adequate remuneration." Id. § 1677(5)(E), (E)(iv); see POSCO v. United States, 977 F.3d 1369, 1371 (Fed. Cir. 2020). "For purposes of clause (iv), the adequacy of remuneration [is] determined in relation to prevailing market conditions for the good or service being provided . . . in the country which is subject to the investigation or review. Prevailing market conditions include price, quality, availability, marketability, transportation, and other conditions of purchase or sale." 19 U.S.C. § 1677(5)(E).

### I. Commerce's Determination that the Provision of Port Usage Rights Without Fee Constituted a Benefit

In the Final Results, Commerce determined that the free provision of port usage rights associated with the Port of Incheon Program conferred a countervailable subsidy to Hyundai Steel. Final IDM at 19–23. The Court remanded this issue for Commerce to reconsider Commerce's benefit

determination relating to the provision of port usage rights at the Port of Incheon. Hyundai Steel, 47 CIT at __, 615 F. Supp. 3d at 1356.

On remand, Commerce provided additional reasoning for its determination that the provision of port usage rights at the Port of Incheon constituted a countervailable benefit. Commerce explained at the outset that it does not view the provision of port usage rights at the Port of Incheon as a subsidy to be analyzed for less than adequate remuneration ("LTAR"). Remand Results at 12. Commerce specified that it examined the agreement between Hyundai Steel and the Government of Korea as focusing on the narrow issue of the Government of Korea's assignment to Hyundai Steel of the right to collect certain port fees, id. at 12–13, and that Commerce regarded the financial contribution received by Hyundai Steel to be revenue foregone. Id. at 13. Commerce noted on remand that Hyundai Steel obtained the right to collect berthing income and other fees associated with port activity during the period of review pursuant to the agreement with the Government of Korea, and determined that "[t]he ability to collect such fees (*i.e.*, fees otherwise payable to the government) cannot be construed as the provision of a good or service but is instead revenue forgone." Id. at 17.

Hyundai Steel argues that Commerce's determination that the prevailing market conditions clause of section 771(5)(E) only applies to LTAR financial contributions is not supported by the plain language of the statute. Pl.'s Br. at 6.

Hyundai Steel contends that Commerce should have analyzed the Port Rights Program to determine if Hyundai Steel paid less for the port rights than it otherwise would earn by considering the prevailing market conditions, including other conditions of purchase or sale. Id. at 7. Defendant and Defendant-Intervenor assert that Commerce's determination is in accordance with law because Commerce determined the provision of port usage rights to be revenue foregone, not LTAR, and conducted a proper revenue foregone analysis without examining the prevailing market conditions. Def.'s Br. at 5–9; Def.-Intervs.' Br. at 3–8. Both Defendant and Defendant-Intervenor contend that the LTAR standards do not apply to the revenue foregone situation. Def.'s Br. at 5–6; Def.-Intervs.' Br. at 5.

The statute provides that when Commerce reviews whether a benefit is conferred, "adequacy of remuneration [is] determined in relation to prevailing market conditions." 19 U.S.C. § 1677(5)(E), (E)(iv). 19 U.S.C. § 1677(5)(E) states that:

> For purposes of clause (iv), the adequacy of remuneration shall be determined in relation to prevailing market conditions for the good or service being provided or the goods being purchased in the country which is subject to the investigation or review. Prevailing market conditions include price, quality, availability, marketability, transportation, and other conditions of purchase or sale.

19 U.S.C. § 1677(5)(E).

19 U.S.C. § 1677(5)(D) states that:

Financial contribution. The term "financial contribution" means

(i)  the direct transfer of funds, such as grants, loans, and equity infusions, or the potential direct transfer of funds or liabilities, such as loan guarantees,

(ii) foregoing or not collecting revenue that is otherwise due, such as granting tax credits or deductions from taxable income. . . .

19 U.S.C. § 1677(5)(D).

On remand, Commerce noted that Hyundai Steel and the Government of Korea's Ministry of Oceans and Fisheries entered into agreements regarding the construction of the Port of Incheon. Remand Results at 12. As part of the agreements, the Government of Korea granted to Hyundai Steel the right to collect fees from third-party users of the Port of Incheon. Id. at 12–13 (citing Hyundai Steel's Initial Questionnaire Resp. (Apr. 10, 2020) at 43, PR 61[1]). Commerce noted that no third party has used the harbor. Id. at 13 (citing Hyundai Steel's Initial Questionnaire Resp. at 43). Commerce clarified on remand that its countervailing duty analysis focused on the narrow aspect of the Port Usage Rights program involving the Government of Korea's assignment to Hyundai Steel the right to collect certain port fees. Id. Commerce explained that it "considered the

---

[1] Citations to the administrative record reflect the public record ("PR") and public remand record ("PRR") document numbers filed in this case, ECF Nos. 44, 58, 61, 64.

financial contribution that Hyundai Steel received pursuant to this program to be revenue foregone. . . . [in that] the fees that the [Government of Korea] gave Hyundai Steel the right to collect—the berthing income and the harbor facility usage fees—which would otherwise have been collected by the [Government of Korea] absent the agreement between the parties, represent revenue foregone by the [Government of Korea] within the meaning of section 771(5)(D)(ii) of the Act." Id. (internal quotation omitted). Commerce explained on remand that it conducted its analysis pursuant to section 771(5)(D)(ii) because the subsidy program was revenue foregone, not the provision of goods or services applicable under section 771(5)(E). Id. at 14–15.

The Court concludes that Commerce reasonably determined that it should conduct a revenue foregone analysis rather than an LTAR analysis because Hyundai Steel's non-payment of port usage fees did not involve the provision of goods or services, but rather involved a type of financial contribution from revenue foregone when the Government of Korea conferred the right to Hyundai Steel to collect revenue from third parties at the port. The Court also concludes that Commerce reasonably determined that the Government of Korea's provision of rights under the Port of Incheon Program, specifically the right to collect revenues from third parties using the port, conferred a benefit to Hyundai Steel. The Court observes that Commerce cited substantial evidence, including Hyundai Steel's

Case 1:21-cv-00536-JCG   Document 65   Filed 08/21/23   Page 10 of 14

Court No. 21-00536                                                                                    Page 10

April 10, 2020 Initial Questionnaire Response at 43, to support its determination that the Government of Korea conferred the right to Hyundai Steel to collect revenue from third-party users of the port.  See Remand Results at 13 (citing Hyundai Steel's Initial Questionnaire Resp. at 43).  Because Commerce's Remand Results with respect to the Port of Incheon Program are in accordance with law and supported by substantial evidence, the Court sustains Commerce's Remand Results on this issue.

> II.  **Partial Remand of Commerce's Determination that Hyundai Steel's Reduced Fees Pursuant to the Sewerage Usage Fees Program Constituted a Countervailable Subsidy**

In the Final Results, Commerce determined that the Sewerage Usage Fees Program was countervailable.  Final IDM at 25–27.  The Court granted Commerce's request for remand to reconsider the Sewerage Usage Fees Program.  Hyundai Steel, 47 CIT at __, 615 F. Supp. 3d at 1356.  On remand, Commerce explained that it gained an increased understanding of how companies could receive a reduction in sewerage fees pursuant to the Sewerage Usage Fees Program and changed its determination to conclude that the program did not constitute a countervailable subsidy.  Remand Results at 5.  Commerce reviewed relevant provisions of Korean law that govern the reduction of sewerage usage fees, including Article 65(1) of Korea's Sewerage Act, Article 36(2) of Korea's Enforcement Decree of the Sewerage Act, and Articles 12, 14, and 21 of the

Incheon Metropolitan City Ordinance on Sewerage System Use. Id. at 5–10. Commerce determined on remand that these Korean federal and municipal laws and regulations "state that sewerage fees shall be based on the volume of sewage discharged into the public sewerage system." Id. at 7. Commerce determined based on these Korean laws and regulations that a sewerage fee reduction based on the volume of water discharged by a participating company would not be excluded. Id. at 8.

In examining the amount of the sewerage fee reduction that Hyundai Steel received on its overall water bill, Commerce determined that the rate adjustments specified in Appendix 4 of the Incheon Metropolis City Ordinance on Sewerage System Use ("Ordinance") apply to narrow categories of users located in disaster zones or users that utilize reuse water and are not attempting to demonstrate that the amount of water discharged into the sewerage system is different than the amount of water supplied. Id. at 9–10 (citing Government of Korea's First Supp. Questionnaire Resp. (July 16, 2020) at Exhibit SEWER-1 (Revised), PR 95–101). Commerce reasoned that Appendix 4 applies only to subparagraphs (1)–(6) of Article 21 (Reduction and Exception) of the Ordinance and not subparagraph (7), which covers "[o]ther instances where the public sewerage management authority acknowledges public interest or any other special conditions." Id. at 10; see Government of Korea's First Supp. Questionnaire Resp. at Exhibit SEWER-1

(Revised) at 8–10. For Hyundai Steel, the reduction was based on a study Hyundai Steel submitted to the Government of Korea that demonstrated the amount of water that Hyundai Steel discharged into the public sewerage system. Remand Results at 9. Commerce determined that "[t]his reduction percentage, therefore, reflects the intent of the federal and municipal regulations that Hyundai Steel be billed based on the amount of water discharged into the sewerage system." Id. Commerce noted that on remand it reopened the record and received new information demonstrating that Hyundai Steel was not unique in receiving a sewerage fee reduction, and that many companies qualified for a similar fee reduction under Korean law. Id. at 10 (citing Government of Korea's Resp. Suppl. Questionnaire (Mar. 8, 2023) at 3, PRR 3. Commerce concluded that:

> Therefore, after a reevaluation of the record, we find that the record does not support a finding that this program is countervailable. Specifically, we determine that the record does not support a finding that the reduction in Hyundai Steel's sewerage fee in Incheon represents revenue foregone, in accordance with section 771(5)(D)(ii) of the Act. . . . Accordingly, there is no revenue foregone to the [Korean] government because Hyundai Steel is simply billed for the service which it has used, according to the regulations that govern the applicable fees.

Id. at 10–11.

No party challenges Commerce's Remand Results regarding the sewerage fees program. Hyundai Steel and Defendant contend that Commerce's Remand Results are supported by substantial evidence and should be sustained. Pl.'s Br. at

3; Def.'s Br. at 4.  The Court observes that the document provided by the Government of Korea on March 8, 2023 confirms Commerce's determination that numerous companies qualified for sewerage fee reductions similar to that received by Hyundai Steel.  <u>See</u> Government of Korea's Resp. Suppl. Questionnaire at 3.  The Court concludes that Commerce reevaluated applicable Korean laws, reopened the record to consider new information, and cited to sufficient record evidence to support Commerce's remand determination that Hyundai Steel did not receive a unique Sewerage Usage Fees reduction constituting a financial contribution and countervailable benefit to Hyundai Steel.  Because Commerce's <u>Remand Results</u> with respect to the Sewerage Usage Fees Program are in accordance with law and supported by substantial evidence, the Court sustains Commerce's <u>Remand Results</u> on this issue.

## CONCLUSION

For the aforementioned reasons, the Court sustains Commerce's determinations that the free provision of port usage rights associated with the Port of Incheon Program conferred a countervailable benefit and Commerce's determination that the Sewerage Usage Fees Program did not constitute a countervailable benefit.

Accordingly, it is hereby

**ORDERED** that the <u>Remand Results</u> are sustained; and it is further

**ORDERED** that judgment will issue accordingly.

                                                                                                      /s/ Jennifer Choe-Groves
                                                                                               Jennifer Choe-Groves, Judge

Dated:  <u>August 21, 2023</u>
             New York, New York